**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LECEDRIC JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-10692** |
| **LT. DARRYL MIZELL, ET AL.** | **SECTION: "B"(3)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Lecedric Johnson, filed this *pro se* and *in forma pauperis* complaint against Lt. Darryl Mizell, Sgt. Thomas Margiotta, and Lt. Thomas Mitchell. In this lawsuit, plaintiff challenges his prison disciplinary convictions.

Defendants filed a motion to dismiss to Fed.R.Civ.P. 12(b)(6).[1] However, because defendants presented matters outside of the complaint for the Court's consideration, the Court notified the parties that the motion would be treated as one for summary judgment. See Fed.R.Civ.P. 12(b). Plaintiff was ordered to file a memorandum in opposition to defendants' motion on or before February 28, 2007.[2] He has filed no such opposition.

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the

---

[1] Rec. Doc. 12.

[2] Rec. Doc. 13.

mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Id. Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.;

Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).  "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

In his complaint, plaintiff states his claims as follows:

> I am writing to inform you of an incident that took place involving Lt. Thomas Mitchell's shift on August 22, 2006, at approximately 2:53 p.m.  I was ordered to be shaken down by Sgt. Thomas Margiotta.  After he performed the shakedown, he all of a sudden began cursing me for no apparent reason whatsoever.  Then he told me not to take things so personal all the time.
> Then he started threatening me ... again, for no apparent reason.  Then he stated to me, "I got something special just for you."  Then he returned to tier 3-L of SMU with a personal food tray just for me and said, "Eat and get full."  I told him that I did not want something that he had played with.  He responded, "I made this myself."  So I pushed it out of Cell #5 and requested to speak with Lt. Mitchell about this situation with my food tray.  He said, "Hold the noise and get full!"  Then he kicked my tray into Cell #5 like it was a football.  Then Lt. Mitchell sprayed me down with a chemical agent twice.  Then he ordered me to clean my Cell #5, and he said if I did not that he was going to whip my black ass and that was a rap.[3]

Plaintiff's request for relief was as follows:

> Please look into this matter.  Furthermore, I would like a reversal of the convictions based upon the denial of due process and the disciplinary rules and procedure violations stated herein.  Also I would like to have all the privileges I lost via the disciplinary hearing associated with and as a result of this matter.[4]

Plaintiff's complaint is hardly a model of clarity.  From the statement of his claim, it would at first blush seem that he is asserting claims for verbal abuse and excessive force.  However, from his request for relief, it appears that he is in fact challenging only the resulting disciplinary hearing and convictions.  That is in fact the way the defendants interpreted plaintiff's claims in their motion.

---

[3] Rec. Doc. 3, pp. 4-5.

[4] Rec. Doc. 3, p. 5.

In that plaintiff has not challenged defendants' interpretation of his claims nor opposed defendants' motion in any manner, the Court concludes that defendants' interpretation of the claims is the correct one. Further, as defendants note in their motion, such claims challenging the disciplinary hearing and convictions are barred by Sandin v. Conner, 515 U.S. 472 (1995).[5]

> In Sandin, the United States Supreme Court held:
>
> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted). The Supreme Court further held that a prisoner's "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. The United States Fifth Circuit Court of Appeals has noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status." Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added).

---

[5] In that the Court agrees with defendants' argument that Sandin is controlling, defendants' alternative arguments need not be considered.

4

In plaintiff's disciplinary proceedings, the only punishment imposed was fourteen weeks cell confinement and thirty-five days of isolation.[6] Those forms of punishment were not atypical, significant deprivations that affected the *duration* of plaintiff's incarceration, and, therefore, he was deprived of no constitutionally cognizable liberty interest. Therefore, plaintiff's claims are legally

---

[6] In support of their motion, defendants have provided the disciplinary records regarding this incident. Those records reflect that plaintiff was charged with Defiance, Aggravated Disobedience, Property Destruction, and Unsanitary Practices. The disciplinary report written by defendant Mitchell described the incident as follows:

> On the above date [August 22, 2006] and approximate time [3:45 p.m.] inmate Lecedric Johnson threw his dinner tray onto the floor and started picking up food items and putting them into his cup while yelling up the tier at Sgt. Tommy Margiotta "come down here Bitch I got something for you". It was obvious that inmate Johnson intended to throw this at Sgt. Margiotta. I retrieved a can of chemical agents and proceeded down the tier to inmate Johnson's cell as I passed the brick wall I observed inmate Johnson make a motion of throwing the substances into the cup onto me. I then applied a short burst of Deep Freeze to inmate Johnsons upper torso to stop him from assaulting me. Inmate Johnson stop attempting to throw the contents of the cup onto me but flatly refused to comply with my orders to give me the cup and come to the bars to be restrained. I exited the tier and started the VCR to record and notified Captain Craig Kennedy, Colonel T.M. Brumfield and Lt. Col. Mike Dunaway of the situation. I then received approval from Captain Kennedy to use the SA-200 Pepperball Launcher if necessary to bring inmate into compliance. Lt. Jody Knight retrieved the launcher and as he arrived Captain Craig Kennedy ordered inmate Johnson to come to the bars and he complied. Inmate was escorted to the shower where he was given a clean jump suit and allowed to shower. Inmate Johnson was also seen by medical.

The records further reflect that a hearing was held on the charges on August 23, 2006, at which time it was determined that "Officer's version is determined to be more credible than inmate's." Accordingly, he was found guilty of the disciplinary charges and sentenced to fourteen weeks of cell confinement and thirty-five days in isolation. Plaintiff appealed the disciplinary convictions to the warden, arguing that he had been denied due process. As in this federal lawsuit, plaintiff requested in his appeal that his disciplinary convictions be reversed and that his lost privileges be restored. The warden denied the appeal, finding that there was no due process violation. Plaintiff did not file an appeal with the Secretary of the Louisiana Department of Public Safety and Corrections.

frivolous. See Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996); see also Payne v. Dretke, 80 Fed. App'x 314, 315 (5th Cir. 2003).

## RECOMMENDATION

It is therefore **RECOMMENDED** that defendants' unopposed motion be **GRANTED** and that plaintiff's claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this tenth day of April, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**